```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                       Richmond Division
```

UNITED STATES OF AMERICA

v.                                    Criminal Action No. 3:05cr17

WILLIAM H. BURNETTE, MONTA
OLANDER JORDAN, WILLIAM
ANDRIAN DUNGEE, CHATYN
LAFALLE BYRD, and SHAWN
LAMONT WEAVER

**MEMORANDUM OPINION**

This matter is before the Court the Defendant Monta Olander Jordan's Motion to Dismiss Indictment for Pre-Indictment Delay (Docket No. 33). The motion is denied.

**BACKGROUND**

On January 18, 2005, the defendant, Monta Olander Jordan, was named in a one-count Indictment, charging Jordan and four co-defendants with assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6).

The indictment arises out of events that transpired on June 24, 2002, as set forth by the United States in its Response. Several days prior to June 24 an inmate at Petersburg Federal Correctional Center, Clarence Jefferson, was approached by another inmate, Chatlyn Byrd, and asked to retrieve a package of marijuana that was to be left in the ladies' room of the visitors area for William Dungee. Jefferson agreed to retrieve the package in exchange for some marijuana.

Authorities at the prison learned of this plan and replaced the package of marijuana with a package of grass coated with dye. Jefferson retrieved the package, but discovered it did not contain marijuana. Jefferson reported that the marijuana was not there and turned the package over to Byrd. Dungee and William Burnette informed Jefferson that they did not believe his story.

On June 24, Jefferson was confronted by Dungee, Burnette, and Jordan in the recreation area of the prison compound. The three inmates took Jefferson on a walk and then jumped him. Jefferson was hit, kicked, dragged, and beaten with a crutch. Following the assault Jefferson was transported to a hospital to be treated for his injuries.

Authorities at the prison questioned Burnette, Jordan, and Dungee as well as all of the inmates in the yard at the time. Jordan was also found to have minor injuries on his hands consistent with fighting. No inmates reported that Jefferson had been the aggressor and Jordan himself did not make such a claim at that time.

All physical evidence collected from inmates in the yard was submitted to the FBI laboratory for trace evidence and DNA analysis. The DNA analysis was not received by the Richmond FBI until November 9, 2004. The indictment was presented to the Grand Jury in January 2005, within two months of the receipt of the DNA results.

About one week before the date originally set for his jury trial,[1] Jordan filed a motion to dismiss, alleging that the United States' pre-indictment delay caused him to suffer actual prejudice. Jordan claims that, because of the delay, a material witness to the beating has been deported and is unavailable for trial. Jordan identified the witness as "Amparo" and claims that Amparo would testify that Jefferson had been the aggressor in the assault. The United States has determined that Amparo was in fact a prisoner at Petersburg FCC at the time of the assault and has since been deported. Amparo was not interviewed following the assault.

## DISCUSSION

In <u>United States v. Marion</u>, the Supreme Court held that the Due Process Clause of the Fifth Amendment would require dismissal of an indictment upon a showing that "pre-indictment delay . . . caused substantial prejudice to [an accused's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." 404 U.S. 307, 324 (1971). Five years later, in <u>United States v. Lovasco</u>, 431 U.S. 783 (1976), the Supreme Court made it clear that prejudice caused by pre-trial delay alone does not warrant dismissal. In <u>Lovasco</u>, the Supreme Court held that, although a showing of prejudice makes the issue

---

[1] The trial was set for June 21, 2005, but was rescheduled for July 20, 2005 after Jordan's motion for continuance was granted. The continuance was granted so that two eyewitnesses to the incident could be brought to trial to testify on Jordan's behalf.

3

ripe for decision, courts also must consider the reasons for the delay, and that no due process violation exists where the delay is attributable to legitimate investigation of crime. See id.

In Lovasco, the Court outlined why the Due Process Clause of the Fifth Amendment is not offended when the government prosecutes a defendant after an investigative delay "even if his defense might have been somewhat prejudiced by the lapse of time [taken for investigation]." United States v. Lovasco, 431 U.S. at 795. In so doing, the Court explained that:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused," . . . precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of mere speed. . . . This the Due Process Clause does not require.

Id. at 795-76.

Informed by the decisions in Marion and Lovasco, the Fourth Circuit has crafted a two-part test for determining whether pre-indictment delay warrants dismissal. Howell v. Barker, 904 F.2d 889, 895 (4th Cir. 1990); see also Jones v. Angelone, 94 F.3d 900 (4th Cir. 1996). First, the defendant must show that he has suffered "actual prejudice" from the pre-indictment delay.

4

Prejudice is demonstrated when the defendant has been "meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." Jones v. Angelone, 94 F.3d at 907.  Second, if actual prejudice is shown, the court then must balance the demonstrated prejudice against the government's purported need for the delay. Howell v. Barker, 904 F.2d at 895.

The Fourth Circuit has held that to make a showing of a Due Process violation due to loss of witness testimony, a defendant must (1) identify the witness he would have called; (2) demonstrate with specificity, the expected content of that witness' testimony; (3) establish to the court's satisfaction that he has made serious attempts to locate the witness; and (4) to show that the information the witness would have provided was not available from other sources. Jones v. Angelone, 94 F.3d at 903.

In this case, Jordan has identified the witness and given a lengthy recitation of his attempts to locate the witness.  However, Jordan has offered nothing,but speculation as to what testimony the witness would have offered and he has failed to demonstrate that the information the witness would have provided was not available from other witnesses.  The United States explained that the prison authorities interviewed all of the inmates in the yard at the time of the assault and the inmates in the building that overlooked the

yard. None of these inmates provided any statements that suggested that Jordan was not the aggressor.

Moreover, in the motion to continue the trial filed just recently, Jordan represents that there are two witnesses to support his view. On the basis thereof, the trial was continued and the attendance of the witnesses (who are in federal confinement) has been arranged. On the record here, actual prejudice cannot be found.

Even if the actual prejudice were found to exist, the motion could not succeed because the delay in bring the indictment was attributable to a good faith investigative purpose as opposed to being an attempt by the United States to gain a tactical advantage. The United States explained that, because there were no eyewitnesses to the assault other than the victim himself, DNA analysis was necessary to establish probable cause for the indictment and to build a case of guilt beyond a reasonable doubt for trial. The indictment was returned about two months after the DNA results were received from the laboratory. On this record, it appears that the delay was the production of investigation and preparation, not the consequence of foot-dragging to secure some tactical advantage.

On this record, the Court find no violation of the Due Process Clause of the Fifth Amendment.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Dismiss for Pre-Indictment Delay is denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/
Robert E. Payne
United States District Judge

Richmond, Virginia
Date:_____